# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **Joel A. Brodsky** ) | |
| ) | **Case No. 22 cv 3283** |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Hon. Edmond Chang** |
| ) | |
| ) | **Magistrate Gabriel Fuentes** |
| **Cameron Stracher, Cameron** ) | |
| **Stracher PLLC., NBC Universal** ) | |
| **Media, LLC., and Peacock TV LLC** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## SECOND AMENDED COMPLAINT

**NOW COMES** the Plaintiff, Joel A. Brodsky, *pro se*, and as his Second Amended Complaint against Defendants Cameron Stracher, Cameron Stracher PLCC, NBC Universal Media, LLC., and Peacock TV LLC., states the following:

## INTRODUCTION

1. This action seeks redress against Defendant Cameron Stracher for breach of his fiduciary duty to Plaintiff Joel Brodsky. Cameron Stracher conducts his business affairs through the New York Professional Limited Liability Company Cameron Stracher, PLLC., which is jointly and severally liable for Cameron Stracher's wrongful actions. Plaintiff also seeks redress from NBC Universal Media, LLC., and Peacock TV LLC., for their aiding and abetting the breach of fiduciary duties owed to Plaintiff by Defendant Stracher, and a California based production company which whom the Plaintiff had entered into agreements. In addition, the Plaintiff seeks

redress against NBC Universal Media, LLC., and Peacock TV LLC., for (a) continuing to aid and abet the production company and co-producer in their breach of fiduciary duty to Plaintiff, (b) interfering with, using without license or permission, and conspiring to illegally use and interfere with, the personal and intellectual property rights of the Plaintiff, and (c) conspiring with Cameron Stracher, NBC Universal Media, LLC., and Peacock TV LLC., to use illegal means have Plaintiff portrayed in a false light by WGN TV Chicago.

2. As will be shown in more detail in this complaint Defendant Cameron Stracher assumed a fiduciary duty to Plaintiff Joel Brodsky when he agreed to negotiate and obtain insurance coverage which covered Plaintiff, negotiate and enter into agreements with media networks for which Plaintiff was entitled to a percentage of the proceeds thereof, as well negotiate and draft agreements with agents and media companies concerning Plaintiffs rights, property, and interests, the proceeds of which Plaintiff was to be paid a percentage of the proceeds thereof. As will also be shown in more detail NBC Universal Media LLC and Peacock TV LLC aided and abetted Cameron Stracher and the California based production company in breaching the fiduciary duties they owed to Plaintiff. Further, NBC Universal Media LLC and Peacock TV LLC are continuing to aid and abet the breach of the fiduciary duties owed to Plaintiff by California based production company using the property and intellectual property of the Plaintiff. Finally, NBC Universal Media LLC and Peacock TV LLC conspired with Cameron Stracher to cause WGN News to portray Plaintiff in a false light using a promotional film involving the Plaintiff which was made by a production company located in the United Kingdom, in violation of the copyright of the production company, and in breach of a confidentiality agreement with said company.

3. The Plaintiff Joel Brodsky's damages which are a direct result of Defendant Cameron Stracher's breach of fiduciary duty to him is far in excess of $75,000.00. The Plaintiff

[2]

Joel Brodsky's damages which are a direct result of Defendant NBC Universal Media LLC and Peacock TV LLC wrongful actions are far in excess of $75,000. Plaintiff seeks monetary damages for his general, special, hedonic, and actual damages, loss of opportunity, emotional pain and suffering, and loss of enjoyment of life, caused by the Defendant Cameron Stracher's aforesaid breach of fiduciary duty.

## JURISDICTION AND VENUE

4. This Honorable Court has diversity subject matter jurisdiction over this matter under 28 U.S.C. §1332(a)(1). The aggregate of the Plaintiffs claim exceeds the sum or value of $75,000.00.

5. Venue is properly placed in the Northern District of Illinois, Eastern Division, through 28 U.S.C. § 1391(b)(2), because the facts and events giving rise to Plaintiff's claims were targeted to the Plaintiff who resides in this judicial district.

## THE PARTIES

6. The Plaintiff Joel A. Brodsky (hereinafter "Plaintiff" or "Brodsky") is an individual who is now, and at all relevant times was, a citizen of the State of Illinois who has his domicile in, and at all relevant times had his domicile in, Cook County, Illinois and within the Northern District of Illinois, Eastern Division.

7. The Defendant Cameron Stracher (hereinafter "Stracher") is an individual who is a citizen of the State of New York, and who has his domicile in, and does business in, New York City, in the State of New York. Stracher is in the business of "entertainment law", which entails facilitating, negotiating agreements for, and assisting in, the production and distribution of programing content on behalf of those involved in the entertainment industry. Defendant Stracher is the sole member, manager and owner of Cameron Stracher, PLLC., a New York Professional

Limited Liability Company.

8. Defendant Cameron Stracher, PLLC, (hereinafter "Stracher PLLC") is a New York Professional Limited Liability Company incorporated in the State of New York under the laws of the State of New York. Stracher PLLC has its principal office in, and is located in, New York City, New York. Defendant Stracher conducts his business through Stracher, PLLC., and at relevant times Stracher PLCC was jointly and severally liable for all acts of Defendant Stracher.

9. Defendant NBC Universal Media LLC, (hereinafter "NBC Universal" or "NBCU") is a Delaware LLC., organized under the laws of the State of Delaware. NBC Universal has its principal place of business in New York City, in the State of New York.

10. Defendant Peacock TV, LLC., (hereinafter "Peacock") is a Delaware LLC., organized under the laws of the State of Delaware. Peacock is a division of, and is owned by, NBC Universal and has its principal place of business in New York City, in the State of New York. Because Peacock is a owned by NBCU they will be referred to hereinafter as "NBCU/Peacock".

## FACTS

11. At all relevant times prior to June of 2019 the Plaintiff was an attorney who had represented Defendants in a number of high profile nationally known criminal cases. One of those cases was concerned a police officer who had been found guilty of murdering his third wife and who's fourth wife was missing under mysterious circumstances. (Hereinafter the "missing wife case") Because of the mystery regarding the disappearance of the fourth wife, this case garnered and continued to garner, national and even international attention.

12. Plaintiff had exclusive knowledge and documents, materials, videos, photographs, and audio recordings regarding the missing wife case.

13. On or about September 2020, Plaintiff had entered into a letter of agreement with a California based producer (hereinafter the "producer") to develop, produce, and license, sell or distribute a fact-based documentary/docudrama regarding the missing wife case, from which he and the producer would divide all the income generated therefrom from all sources.

14. On or about March 2020, a major network expressed serious interest in funding the development of and licensing for distribution a docudrama based on the missing wife case.

15. In order to be able to enter into an agreement with the network it was necessary to obtain various types of insurance for Plaintiff, the production companies and the network. Because of some unique aspects of the missing wife case difficulties arose in obtaining the insurance.

16. Then, in the middle of 2021, the producer contacted Defendant Stracher to work on obtaining the required insurance policies, including coverage for the Plaintiff. The Defendant Stracher held himself out to be an expert, with extensive experience and contacts, who would be able to solve any insurance issues.

17. In order to do this the Plaintiff was required to make representations and disclosures to, and provide confidential documents to, Defendant Stracher so that Stracher could obtain the appropriate insurance policies, including coverage for the Plaintiff. Using the representations, disclosures and confidential documents supplied to him by the Plaintiff Defendant Stracher was able to obtain, or stated he would be able to obtain, the required insurance coverage, including the coverage for Plaintiff.

18. At all times relevant hereto the Defendant Stracher knew that the Plaintiff's agreement with the producer was for the Plaintiff to get one-third (1/3) of any and all income generated from and all sources, which was generated by the docudrama of the missing wife case.

19. On information and belief it was at this point that the producer asked Defendant

Stracher to become the entertainment attorney regarding the docudrama about the missing wife case, and the Defendant Stracher agreed to assume this role in exchange for compensation to be paid from the income generated by the docudrama about the missing wife case. Therefore, when he agreed to be the entertainment attorney for the docudrama of the missing wife case Defendant Stracher knew that a portion of this compensation was therefore, in effect, to be paid by Plaintiff.

20. From the point of time he started working to solve the above referenced insurance issue, and by the time he agreed to be the entertainment attorney for the docudrama regarding the missing wife case, the Defendant Stracher owed the Plaintiff the fiduciary duties owed by a fiduciary to his principal, including but not limited to the fiduciary duty to in act in good faith, to act with honesty, to provide full disclosure, to act with loyalty, to avoid conflicts of interests, and to act in the best interest of, the Plaintiff.

21. However, shortly after he began working as the entertainment attorney for the docudrama on the missing wife case Defendant Stracher was informed that the Plaintiff was experiencing financial difficulties. Because of this, and in breach of his aforesaid fiduciary duties to the Plaintiff, the Defendant Stracher violated these duties, including, but not limited to, the following ways:

    A. Refused to disclose, and hid, important and relevant information from the Plaintiff regarding the negotiations with the network regarding the docudrama on the missing wife case;

    B. On information and belief negotiated with the network for terms which would deprive the Plaintiff of his share of income from, regarding the docudrama on the missing wife case;

    C. On information and belief negotiated with the network for terms which would

[6]

deprive the Plaintiff of his property rights in, and his share of income deriving from those rights, regarding the docudrama on the missing wife case;

D. Worked with the producer to use the Plaintiffs financial difficulties to economically coerce, and use economic duress, to attempt to force the Plaintiff, and to force the Plaintiff, to enter into agreements under which he would give up a great deal of financial benefit he was entitled to receive from the missing wife case docudrama, and give up property rights in the said docudrama, and therefore the ability to derive future benefits from the said docudrama and collateral projects derived therefrom.

E. Lied to the Plaintiff and others about the terms of the agreements between the Plaintiff and the producer, including but not limited to the expiration date of an agreement;

F. Refused to provide the Plaintiff a complete and underacted copy of the final network agreement which he negotiated between the network and the producers, which provided for a docudrama based on the information exclusively known by the Plaintiff, and documents, materials, videos, photographs, and audio recordings regarding the missing wife case which were the property of the Plaintiff, to which the Plaintiff was supposed to get one-third of all income generated by the docudrama, and all future rights an collateral projects;

22. As a direct and proximate result of Defendant Stracher's breaches of his fiduciary duties to Plaintiff, as well as others breaches of fiduciary not yet discovered, all agreements between the Plaintiff and the producer were expired or invalid, and the entire production of the docudrama regarding the missing wife case fell apart and ended.

23. Therefore, as a direct and proximate result of Defendant Stracher's breaches of fiduciary duty Plaintiff suffered great, general, special, hedonic, and actual damages, including emotional pain and suffering, loss of enjoyment of life, anguish, and suffering, in a sum well in excess of seventy-five thousand dollars ($75,000.00).

24. The network referred to in paragraphs 21(A), 21(B), 21(C), and 21(F), *supra.*, is NBCU/Peacock.

25. On or about July, 2021 the producer informed the Plaintiff that a new co-producer (hereinafter the "co-producer") was needed in order to be able to produce the documentary/docudrama about the missing wife case, (hereinafter "documentary/docudrama" or "docudrma"), and help him with paying the initial costs and expenses which he expected to start accruing. This was because when the Plaintiff and the producer entered into the agreement to referred to in paragraph thirteen (13) *supra.*, the Plaintiff and the producer had also agreed that the producer would bear all of the costs of the development and production of the docudrama, and that he would be reimbursed out of the income derived from the docudrama first, before the net proceeds where distributed.

26. When Plaintiff and the producer entered into the agreement to referred to in paragraph thirteen (13) *supra.*, they agreed that the division of any income from all sources from the documentary/docudrama about the missing wife case, was to be one-third (1/3) for Plaintiff and two-thirds (2/3) for the producer. Then, during this conversation in July of 2021 referred to in paragraph 25, *supra.*, the producer stated that the co-producer would be getting one-half (1/2) of his two-thirds (2/3) of the income from the documentary/docudrama about the missing wife case, and the co-producer would also share in the producer's burden of paying any costs or expenses. Plaintiff stated that this was acceptable to him because his right to one-third (1/3) of the income

from the documentary/docudrama was not affected by the co-producer joining the partnership.

27. On November 11, 2021, the producer, co-producer and Plaintiff had an audio/video call via Zoom to discuss the documentary/docudrama and their relationship. At that time the Plaintiff, the producer and the co-producer were on the Zoom call. On this Zoom call the producer, the co-producer and the Plaintiff re-confirmed that the income from the documentary/docudrama about the missing wife case would be divided with each of them getting one-third (1/3) of net income from all sources. The producer, the co-producer and the Plaintiff also confirmed that they would bear all of the costs of the development and production of the docudrama, and that they would be reimbursed out of the income derived from the docudrama first, before the net proceeds where distributed. Everyone agreed that because the Plaintiff would be contributing his exclusive knowledge as well as would agree to license the intellectual and personal property he owned, which are described in paragraph 11 *supra*., this arrangement was fair.

28. On or about April 1, 2022, the producer, and a co-producer, entered into a written agreement with NBCU/Peacock to develop, produce, license, sell and distribute the documentary/docudrama about the missing wife case (hereinafter "April 1, 2022 agreement").[1] In breach of their fiduciary duties to Plaintiff, including but not limited to the fiduciary duty to in act in good faith, to act with honesty, to provide full disclosure, to act with loyalty, to avoid conflicts of interests, and to act in the best interest of, the Plaintiff, the producer and co-producer: (a) did not include the Plaintiff as a party to this agreement, (b) hid from, and lied to Plaintiff about, the negotiations being conducted with NBCU/Peacock, (c) hid the terms of this agreement with

---

1. All that the Defendant Stracher, the producer and the co-producer would show the Plaintiff of the April 1, 2022 agreement was one highly redacted page, in beach of Strachers, producers and co-producers fiduciary duties to Plaintiff. (Exhibit "A")

NBCU/Peacock from the Plaintiff, (d) refused to give the Plaintiff an unredacted copy of the agreement with NBCU/Peacock when he asked, (e) lied to the Plaintiff about terms of the agreement with NBCU/Peacock,(f) negotiated and entered into an agreement with NBCU/Peacock which were intended to deprive the Plaintiff of his rights to his intellectual and personal property, and (g) purposely negotiated and entered into the agreement with NBCU/Peacock which would cut the Plaintiff out of his right to one-third (1/3) of the income from all sources from the documentary/docudrama.

29. The producer and co-producer also breached their fiduciary duties to Plaintiff, and aided and abetted Defendant Stracher in his breach of his fiduciary duties to the Plaintiff, in the manner more fully described in paragraphs 21(A) through 21(F), *supra.,* of this Complaint.

30. The Defendant Starcher negotiated the April 1, 2022 agreement with Defendant NBCU/Peacock while at the same time beaching the fiduciary duties owed to the Plaintiff as described in paragraphs 21(A) through 21(F), *supra* and paragraph 28, *supra.*, of this Complaint.

31. At all times relevant hereto, during the negotiations for the April 1, 2022 agreement, and when it entered into the April 1, 2022 agreement, Defendant NBCU/Peacock knew that the Plaintiff had an agreement with the producer and co-producer, under which Plaintiff was to be paid one-third (1/3) of the net income from all sources from the documentary/docudrama, including any collateral or back-end income.

32. Also, at all times relevant hereto, during the negotiations for the April 1, 2022 agreement, and when it entered into the April 1, 2022 agreement, Defendant NBCU/Peacock knew that the documentary/docudrama regarding the missing wife case was going to be using the intellectual property and personal property of the Plaintiff, and that the use of this property was material to said documentary/docudrama.

33. Further, at all times relevant hereto during the negotiations for the April 1, 2022 agreement, and when it entered into the April 1, 2022 agreement, Defendant NBCU/Peacock knew that Defendant Stracher was negotiating for an agreement to develop, produce, license, sell, and distribute the documentary/docudrama for which the Plaintiff was entitled to receive one-third (1/3) of the income it produced from all sources, which used the Plaintiffs personal and intellectual property, and which the Plaintiff had a material, substantial and legitimate interest in the terms of.

34. Finally, at all times relevant hereto the the Defendant NBCU/Peacock, knew that Plaintiff owned the knowledge and owned the documents, materials, videos, photographs, and audio recordings described in paragraph 12 *supra.,* which were essential for the production of the docudrama.

35. At all times relevant hereto, as a result of having the forgoing knowledge NBC/Universal knew that Defendant Stracher, the producer, and the co-producer, owed the Plaintiff the fiduciary duties owed by a fiduciary to his principal, including but not limited to the fiduciary duty to in act in good faith, to act with honesty, to provide full disclosure, to act with loyalty, to avoid conflicts of interests, and to act in the best interest of, the Plaintiff.

36. In the months following April 1, 2022, the Plaintiff requested a copy of the April 1, 2022 agreement between the producer and NBCU/Peacock from NBCU/Peacock. However, even though NBCU/Peacock knew that Defendant Stracher and the producer owed fiduciary duties to Plaintiff as detailed *supra*., including the duty not to conceal, and the duty to disclose, material information to him, it refused to give Plaintiff a copy of the April 1, 2022 agreement. By refusing to give the Plaintiff a copy of the aforesaid April 1, 2022 agreement NBC/Universal knowingly and substantially aided, abetted and assisted Defendant Stracher and producer in breaching their aforesaid fiduciary duties to Plaintiff, to NBC/Peacock's own financial benefit.

37. Prior to April 1, 2022, the Plaintiff asked NBCU/Peacock about the status of the negotiations for an agreement to produce and license the documentary/docudrama about the missing wife case. However, even though NBCU/Peacock knew that Defendant Stracher and the producer owed fiduciary duties to Plaintiff as detailed *supra*., including the duty not to conceal, and a duty to disclose, material information to him, it refused to provide any information to the Plaintiff about the status of the negotiations for the aforesaid agreement. By refusing to provide any information to the Plaintiff about the status of the negotiations for the aforesaid agreement NBC/Universal knowingly and substantially aided, abetted and assisted Defendant Stracher and producer in breaching their aforesaid fiduciary duties to Plaintiff, to NBC/Peacock's own financial benefit.

38. Prior to and on April 1, 2022, NBCU/Peacock knew that Defendant Stracher, the producer and the co-producer were negotiated for an agreement with NBCU/Peacock to develop, produce, license, distribute and sell the documentary/docudrama that contained terms that would deprive the Plaintiff of the income he was entitled to, deprive him of his personal and intellectual property rights, and deprive him of his right to earn income in the future. NBCU/Peacock further knew that the Defendant Stracher, plaintiff and the co-producer were accomplishing this by violating their fiduciary duties to Plaintiff in the manner described in paragraphs 21(A) through 21(F), *supra* and paragraph 28, *supra.*, of this Complaint. By continuing to negotiate with Defendant Stracher, the producer, and the co-producer, for the April 1, 2022 agreement, and by entering into the April 1, 2022 agreement negotiated by Defendant Stracher, the producer, and co-producer, NBC/Universal knowingly and substantially aided, abetted and assisted Defendant Stracher, producer and co-producer in breaching their aforesaid fiduciary duties to Plaintiff, to NBC/Peacock's own financial benefit.

39. Immediately after the entire production of the documentary/docudrama regarding the missing wife case fell apart and ended, as described in paragraph 22 *supra*., Plaintiff told NBCU/Peacock not to use, or allow the producer, co-producer, Defendant Stracher, or anyone else to use the Plaintiffs intellectual property, documents, materials, videos, photographs, and audio recordings (see paragraph 12 *supra*.) to develop, produce, license, distribute and sell a documentary/docudrama regarding the missing wife case, because nobody had the Plaintiffs license,, consent or permission to do so.

40. However, after the entire production of the documentary/docudrama regarding the missing wife case fell apart and ended, as described in paragraph 22 *supra*., despite; (a) having actual knowledge that nobody had permission to use Plaintiffs aforesaid personal or intellectual property, and (b) having actual knowledge that the producer, co-producer and Defendant Stracher had not informed the Plaintiff that they were continuing to work on the documentary docudrama even though they still owed the Plaintiff the fiduciary duties described in paragraph thirty-five (35) *supra*., NBCU/Peacock continued to work with, and are still continuing to work with the producer, the co-producer, and on information and belief Defendant Stracher, to produce, distribute, license and sell a documentary/docudrama on the missing wife case using the Plaintiffs personal and intellectual property, to NBC/Peacock's own financial benefit as it will make money from this production.

41. By working on, and continuing to work on the documentary/docudrama with the producer, co-producer and on information and belief Defendant Stracher, using the Plaintiffs aforesaid personal and intellectual property without the Plaintiffs permission, Defendant NBCU/Peacock is knowingly violating the Plaintiffs personal and intellectual property rights in the property which is described in paragraph 12 *supra*.

42. Also, by working on, and continuing to work on the documentary/docudrama with the producer, co-producer and on information and belief Defendant Stracher, using the Plaintiffs aforesaid personal and intellectual property without the Plaintiffs permission, Defendant NBCU/Peacock is knowingly and substantially aiding, abetting and assisting, the producer, co-producer and on information and belief Defendant Stracher in breaching their aforesaid fiduciary duties to Plaintiff and in violating the Plaintiffs personal and intellectual property rights in the property which is described in paragraph 12 *supra*., to NBC/Peacock's own financial benefit.

43. In November of 2022, the Plaintiff collaborated with a film production company located in the United Kingdom ("UK') to see if he could work with them to find an honest network or distributor who may be interested in developing and producing the documentary/docudrama concerning the missing wife case. Plaintiff was careful to explain to the UK company that if an interested network or distributor could be found that some arrangement would have to be made with the producer and co-producer before the project could proceed.

44. In order to inquire of the networks and distributors the UK film production company and the Plaintiff made a 2:35 "sizzle" promotional video about the subject matter for their agent to send to selected networks and distributors. The UK firm and owned the copyright to this video, and also obtained a confidentiality agreement from each network and distributor it was sent to. By April 2023 no positive responses had been received, and so the UK firm and Plaintiff ceased inquiring for the time being.

45. One of the networks the UK firms agent sent the "sizzle" video to was NBCU/Peacock. When it was sent in January 2023, the Plaintiff and the UK production company were unaware that Defendant NBCU/Peacock were was still working with the producer, co-producer, and on information and belief Defendant Starcher, to develop and produce the documentary/docudrama.

46. When the "sizzle" video was sent to NBCU/Peacock, it was sent for their internal use to see if they were interested in the documentary/docudrama, was subject to the UK production firms copyright, and was only given to them after they had entered into a confidentiality agreement with the UK production company not to release it to anyone outside of NBCU/Peacock.

47 On October 23, 2023 the Court denied the Defendant Stracher's FRCP 12(b)(6) Motion to Dismiss in this case. On October 24, 2023 the Plaintiff sent a letter to NBCU/Peacock notifying them that the stay of their compliance with the Plaintiff's Subpoena for documents issued in this case, which had previously been served on it in July 2022, was no longer in effect. The letter also stated that their compliance with the subpoena was required. On November 10, 2023 NBCU/Peacock filed an objection to the Plaintiff's Subpoena for documents and did not disclose produce any documents.

48. Between October 23, 2023 and November 12, 2023, which was after the denial of Strachers motion to dismiss and after Plaintiff demanded that NBCU/Peacock comply with his subpoena, NBCU/Peacock and Stracher agreed to use the aforesaid "sizzle" video to cause the portrayal of the Plaintiff in a false light to the public.

49. In order to make substantial progress in accomplishing the goal of causing Plaintiff to be portrayed to the public in a false light, sometime between October 23, 2023 and November 12, 2023, NBCU/Peacock gave a copy of the aforesaid "Sizzle" promotional video to Defendant Stracher. NBCU/Peacock gave the "Sizzle" video to Stracher without obtaining the consent of the UK production firm in violation of the confidentiality agreement and UK production firms copyright. Therefore NBCU/Peacock acted illegally when it gave the "Sizzle" video to Defendant Stracher.

50. WGN-TV in Chicago is closely connected with NBCU/Peacock, such that WGN-TV

will always try to comply with a request from an executive of NBCU/Peacock executive. WGN-TV in Chicago is owned by Nexstar Media. Nexstar Media owns forty-two (42) NBC Television Network stations. NBC Television Network stations broadcast the content of NBC Television Network. The NBC Television Network is owned by NBCU.

51. Sometime between October 23, 2023 and November 12, 2023, at the behest of Defendant Stracher, an executive at NBCU/Peacock contacted an executive or producer at WGN-TV and Chicago and asked that they do a news story regarding Plaintiff that will portray him in a as trying to sell the location of the missing wife and as willing to violate the attorney-client privilege for money, using the "Sizzle" video.

52. The executive or producer agreed because at the end of November of 2023, the Plaintiff received a telephone call from a reporter at WGN News inquiring about Plaintiffs efforts to have a documentary/docudrama made about the missing wife case. Plaintiff agreed to speak with the reporter, and was surprised when the focus of the interview was about his efforts with the UK based firm. At no time during the interview was any mention made about the "sizzle" promotional video.

53. Then on December 7, 2023 WGN broadcast a 6:57 "hit piece" using clips from the aforesaid "sizzle" video. (hereinafter the "broadcast") The broadcast portrayed Plaintiff in a false light in that it falsely portrayed him as (a) trying to sell the location of the missing wife, (b) being willing to violate the attorney-client privilege solely for money, (c) acting without the cooperation of the missing wife's family, and (d) as still being credibly accused of being ineffective counsel in a domestic murder case when four (4) courts have already found that Plaintiff provided error free representation in that case.

54. The broadcast was published December 7, 2023 and was published to over 3 million

[16]

viewers, and was available online and falsely portrayed the Plaintiff in a the false light in which the plaintiffs were placed would be highly offensive to a reasonable person. NBCU/Peacock acted with actual malice toward the Plaintiff and intended for the broadcast to be a hit piece which injured the Plaintiff and his reputation.

55. The broadcast could not have been made without the use of the "Sizzle" video. The "Sizzle", which NBCU/Peacock knew was only a confidential promotional video, was an essential part of the broadcast intended to show the Plaintiff in a false light.

56. As a result of the broadcast portraying the Plaintiff in a false light the Plaintiff suffered injury to his reputation and emotional pain and suffering.

WHEREFORE, Plaintiff prays that this Court enter Judgment in his favor and against Defendants Cameron Stracher, Cameron Stracher PLLC, NBC Universal Media, LLC., and Peacock TV LLC, jointly and severally, in a sum in far in excess of seventy five thousand dollars ($75,000.00), plus Plaintiffs costs of suit, execution to issue.

> Respectfully Submitted
> Joel A. Brodsky, pro se
>
> /s/ *Joel A. Brodsky*
> Joel A. Brodsky, pro se

**Joel A. Brodsky**
Appellant – *Pro Se*
3240 N. Lake Shore Dr., Apt. 8C
Chicago IL 60657
(312) 523-9570
joelbrodsky@sbcglobal.net

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the following statements set forth in this instrument is true and correct: that I caused to be served the above and foregoing <u>Second Amended Complaint </u>via the EM/ECF electronic filing system to all the attorneys for all parties of record on the <u>       day of February,        2024</u> before 5:00 p.m. midnight

By:   <u>/s/ *Joel A. Brodsky*</u>
           Plaintiff Joel Brodsky, pro se

**Joel A. Brodsky**
Plaintiff *pro se*
3240 N. Lake Shore Drive, 8C
Chicago IL 60657
(312) 523-9570
joelbrodsky@sbcglobal.net



| | |
|---|---|
| 8. Producer Fees | 10% of the Final Budget (not including overages) (excluding Producer Fee and any fees and amounts paid to or in connection with any attached executive producers, formats, if any, talent (including fringe) but only if Peacock directly negotiates the talent agreements, breakage, deferments, contingencies, legal, insurance costs, Covid 19 budget, and any agency packages) ("**Producer Fee**"). Producer Fee inclusive of all fees for Producer's in-house producers, physical production services, and any other attached producers (Producer shall be responsible for all compensation due to such parties, if any). No Producer Fee for Enhanced Materials (defined below in Section 9) if no original services are rendered. If Peacock does not elect to engage Producer to render original services on a Companion (as defined below in Section 9) Program, no additional fee to Producer. If Peacock elects to engage Producer to render original services on a Companion Program, Producer shall receive ten percent (10%) of such approved Companion Program budget (minus standard deductions). No additional compensation shall be paid to Producer for any initial or repeat exhibitions of Programs made or authorized by Peacock's affiliated companies through any and all platforms. |

Exhibit "A"