UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOEL A. BRODSKY,<br>    Plaintiff<br><br>    v.<br><br>CAMERON STRACHER *et al.*,<br>    Defendant | No. 22 CV 3283<br><br>Judge Jeremy C. Daniel |

### ORDER

The defendants' motions to dismiss [109, 111] are denied. The defendants have 21 days to answer the plaintiff's corrected second amended complaint.

### STATEMENT

Plaintiff Joel A. Brodsky alleges that Defendants Cameron Stracher and his business entity, Cameron Stracher P.L.L.C. (collectively, "Stracher"), breached their fiduciary duties to him regarding the production of a docudrama about a newsworthy criminal case in which he represented a party as an attorney. (R. 101 ("SAC")).[1] Brodsky also asserts an aiding and abetting breach of fiduciary claim against Defendants NBCUniversal Media LLC and Peacock TV LLC (collectively, "NBCU/Peacock"). (*Id.*)[2]

Specifically, the second amended complaint claims that on or about September 2020, Brodsky entered into "a letter of agreement" with an unnamed, "California-based producer." (*Id.* ¶ 13.)[3] The agreement provided that Brodsky and the producer "would divide all the income generated therefrom from all sources." (*Id.*) "[I]n the middle of 2021," the producer asked Stracher to help obtain insurance policies for the project, "including coverage for [Brodsky]." (*Id.* ¶ 16.) Brodsky shared confidential documents with Stracher to facilitate him in obtaining this insurance. (*Id.* ¶ 17.) "At all times" Stracher allegedly knew of Brodsky's and the producer's agreement for Brodsky to receive one-third of the docudrama's profits. (*Id.* ¶ 18.) At some point, though not

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.
[2] The Court has subject matter jurisdiction over these claims based on diversity of citizenship.
[3] The following description of the factual allegations underlying Brodsky's claims is drawn from the complaint and is presumed true for the purpose of resolving the pending motion. *See Vimich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). A more fulsome explanation of the underlying allegations can be found in the Court's order denying Stratcher's first motion to dismiss, R. 36.

described in the complaint, the producer contacted Stracher "to become the entertainment attorney regarding the docudrama about the missing wife case[.]" (*Id.* ¶¶ 19–20.) Stracher subsequently negotiated an agreement between the producer and NBCU/Peacock to produce the docudrama, which was executed on or around April 1, 2022. (*Id.* ¶ 30.) He asserts that this agreement blocked his right to receive profits from the docudrama. (*Id.* ¶ 28.) Brodsky claims that NBCU/Peacock knew of his partnership with the producer. (*Id.* ¶¶ 2, 28, 31.) Brodsky further alleges that Stracher breached fiduciary duties to him by excluding him from this agreement and concealing it from him. (*Id.*) Brodsky also claims NBCU/Peacock aided and abetted Stracher in the breach by excluding him from the contract.

The defendants filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) (R. 109; R. 111). This is the second time Stracher has moved to dismiss the claims against him. (*See* R. 22.) The Court previously denied Stratcher's motion on the basis that Brodsky had sufficiently alleged the existence of a fiduciary duty. (R. 36.) Brodsky sought leave to file an amended complaint naming NBCU/Peacock as defendants, which the Court granted. (R. 78; R. 82; *see* R. 133 ¶ 6.) Brodsky subsequently corrected his second amended complaint by removing one claim formerly asserted against NBCU/Peacock, leaving only a claim that they aided and abetted Stratcher's breach of fiduciary duty to Brodsky. (*See* SAC.)[4] The Court now considers the defendants' motions to dismiss Brodsky's second amended complaint.

To survive a motion to dismiss under Rule 12(b)(6), a complaint only needs to contain factual allegations that, when accepted as true, are sufficient to "state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–57 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Any ambiguities in the complaint are construed in the plaintiff's favor. *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1205 (7th Cir. 1998). A motion to dismiss will be granted only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitles him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).

### I. BREACH OF FIDUCIARY DUTY CLAIM AGAINST STRACHER

Illinois law governs this diversity case. *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 876 (7th Cir. 2005).[5] In Illinois, "in order to state a claim for breach of fiduciary duty, it

---

[4] The defendants also move to dismiss any claim for violating Brodsky's intellectual property rights. (R. 110 at 14–15; R. 112 at 8–11.) But Brodsky's consolidated reply to the defendants' motions to dismiss makes clear that the complaint asserts only breach of fiduciary as "a single claim[,] which has multiple theories of recovery." (R. 133 ¶ 13.) Because Brodsky has disclaimed any such claims, the defendants' motion is moot.

[5] State law governs substantive issues in a diversity action. *Gacek v. Am. Airlines, Inc.*, 614 F.3d 298, 301 (7th Cir. 2010). NBCU/Peacock asserts that whether New York or Illinois law applies is immaterial

must be alleged that a fiduciary duty exists, that the fiduciary duty was breached, and that such breach proximately caused the injury of which the plaintiff complains." *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000). A fiduciary duty may "arise in a wide range of settings," including "as a matter of law, such as the relation between attorney and client [or] between principal and agent," or "from the terms of a contract[.]" *Restatement (Third) of Torts: Liab. for Econ. Harm* § 16 (Am. L. Inst. 2020). Stracher focuses on the first element, arguing that dismissal is warranted because the complaint does not support an inference of any fiduciary duty. (R. 110 at 8–13.)

### A. Whether Fiduciary Duties Arise From an Implied Attorney-Client Relationship

As stated, the Court denied Stracher's motion to dismiss Brodsky's first complaint. (*See* R. 36.) In doing so, the Court concluded that Brodsky's initial complaint supported the existence of a fiduciary duty between Stracher and Brodsky. (*Id.*) Although the original complaint did not plausibly allege that Stracher "held a position of influence and superiority" over Brodsky, it supported an inference that an attorney-client relationship existed between Brodsky and Stracher based on the conduct alleged. (*Id.* at 4–5); *see Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1320 (7th Cir. 1978) ("A fiduciary relationship may result because of the nature of the work performed and the circumstances under which confidential information is divulged."). These allegations are unchanged in the second amended complaint, and so Brodsky asserts that Stracher's motion to dismiss these renewed allegations must fail. (R. 133 ¶ 17.)[6]

Stracher argues that the second amended complaint does not support an inference that an attorney-client relationship existed between him and Brodsky. (R. 110 at 11.) The Court has already rejected this argument. (R. 36 at 4–5.) Yet, Stracher's view is that the Court's prior ruling "cannot be squared with [Brodsky's] own statements" made in Brodsky's response to Stracher's first motion to dismiss in which Brodsky "expressly rejected the conclusion that Stracher acted as his attorney." (R. 110 at 9–10.) But they can be squared with the second amended complaint, which alleges that the plaintiff made "representations and disclosures to" and "provided confidential documents to" Stracher, an attorney, so that Stracher could use his "extensive

---

to the resolving the present motions. (*See* R. 112 at 8.) Stracher also claims that the Development and Production agreement is governed by New York law, but offers no choice-of-law analysis. *See generally E. Coast Ent. of Durham, LLC v. Houston Cas. Co.*, 31 F.4th 547, 550 (7th Cir. 2022) (providing that "the party seeking a choice-of-law determination, bears the burden of demonstrating that a conflict exists").

[6] Brodsky's argument that the Court should construe Stratcher's motion to dismiss as a motion for reconsideration is misplaced. (*See* R. 133 ¶ 5.) "[W]hen a plaintiff files an amended complaint, the amended complaint supersedes the original complaint." *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782 (7th Cir. 2013). Accordingly, as mentioned, the issue presently before the Court is simply whether "if it appears beyond doubt that" the second amended complaint sets forth "no set of facts in support of his claim which entitles him to relief." *Conley*, 355 U.S. at 45–46.

3

experience and contacts . . . to solve any insurance issues." (R. 101 ¶¶ 16–17.) These allegations are sufficient to support an inference that a fiduciary relationship existed.

In any event, the Court doubts the relevance of an argument Brodsky made regarding his original complaint at the present stage. "A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (emphasis in original). In defending his new complaint (which controls, *Scott*, 725 F.3d at 782) Brodsky does not disavow the attorney-client relationship theory. (*See* R. 133 at 6.) Stracher essentially asks the Court to bar Brodsky from recovering on this discrete theory supporting his breach of fiduciary duty claim, which *BBL, Inc.* prohibits. It would also be improper for the Court to restrict Brodsky to a specific legal theory because plaintiffs are not required to allege specific legal theories in their complaints. *See Shah v. Inter-Cont'l Hotel Chi. Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002). The Court thus declines Stracher's request to bar Brodsky from recovering based on a particular theory at this stage.

### B. Whether Fiduciary Duties Arise as the Partnership's Attorney

Because there are sufficient allegations to infer a fiduciary duty, the Court need not consider Stracher's argument that no duty arose by virtue of the partnership between Brodsky and the producer. *See BBL, Inc.*, 809 F.3d at 325 (prohibiting dismissal of parts of claims). Still, for the sake of completeness, the Court addresses whether the complaint also supports an inference that Stracher owed Brodsky fiduciary duties based on Stracher's role as attorney for the partnership or one of the partners. (SAC ¶¶ 13, 18, 26; *see* R. 133 ¶ 26.)

Stracher argues that the Development and Production agreement he attaches to his motion to dismiss forecloses Brodsky's claim of a partnership with the producer. (R. 110 at 12.) The Court will not consider this document, however, because it is not mentioned in the complaint. *See Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022) (providing that the incorporation-by-reference doctrine applies to "documents that are (1) referenced in the plaintiff's complaint, (2) concededly authentic, and (3) central to the plaintiff's claim.").[7]

Accordingly, the only remaining issues are whether the complaint supports an inference that (i) a partnership existed between Brodsky and the producer and (ii)

---

[7] Even if the Development and Production agreement could be considered, it would control only if it "incontrovertibly contradict[ed] the allegations in the complaint." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). It does not. Whether a partnership existed is an inherently factual inquiry in which the Court must consider not only the Development and Production agreement, but "all facts and circumstances surrounding the formation of the business." *In re Marriage of Hassiepen*, 646 N.E.2d 1348, 1354 (Ill. App. 1995).

there is a basis for extending liability to Stracher as a third party. The answer to both questions is yes.

First, the complaint supports an inference that a partnership existed between Brodsky and the producer if it plausibly alleges that "(1) the parties join[ed] together to carry on a venture for their common benefit, (2) each party contribute[d] property or services to the venture, and (3) each party ha[d] a community of interest in the profits of the venture." *In re Marriage of Hassiepen*, 646 N.E.2d at 1353. Here, Brodsky alleges that the parties entered into the letter of agreement, which evidences an intention to share profits. (SAC ¶ 13.) It is plausible that the producer and Brodsky had a community of interest in generating their shared profits. *Rizzo v. Rizzo*, 120 N.E.2d 546, 551 (1954) ("The essential test . . . is the sharing of the profits[.]"). Additionally, "the receipt of a share of the business profits is *prima facie* evidence that a person is a partner in the business." *In re Marriage of Hassiepen*, 646 N.E.2d at 1353. Thus, the Court concludes that the complaint supports an inference that Brodsky and the producer formed a partnership. The producer thus owed Brodsky fiduciary duties. *See 1515 N. Wells, L.P. v. 1513 N. Wells, L.L.C.*, 913 N.E.2d 1, 11 (Ill. App. Ct. 2009) ("[A] fiduciary relationship exists between partners and each is bound to exercise the utmost good faith in all dealings and transactions related to the partnership.").

Second, Brodsky claims that Stratcher's role as attorney for the partnership *per se* extended fiduciary duties to him. (R. 133 ¶ 26.) On this point Brodsky is mistaken; only his partner owed him fiduciary duties. *See, e.g., Kopka v. Kamensky & Rubenstein*, 821 N.E.2d 719, 725 (Ill. App. Ct. 2004) (rejecting the plaintiff's argument that "attorneys for a partnership are obligated to treat each partner's interest equally"). As such, for this theory, liability only extends to Stracher, a third party, if: (1) the third party committed an act or omission that furthers or completes the breach of duty; and (2) at the time of the act or omission, the third party knew (or possessed the "legal equivalent" of knowledge) that the fiduciary's actions amount to a breach. *See Chabraja v. Martwick*, 618 N.E.2d 800, 803 (1993). Under these principles, as a nonmember of the partnership, Stracher only is liable if the complaint plausibly alleges that Stracher knowingly aided the producer in breaching *his* fiduciary duties to Brodsky.

Here, as his partner, the producer owed Brodsky utmost good faith in all dealings and transactions. Therefore, the producer plausibly breached this duty by allegedly concealing and lying to Brodsky about his agreement with NBCU/Peacock. (*See* SAC ¶ 28.) The complaint plausibly alleges that Stracher furthered the producer's breach by negotiating the agreement with NBCU/Peacock. (*Id.* ¶ 30.) Brodsky also alleges that Stracher had sufficient knowledge that the producer's actions breached his fiduciary duties to Brodsky because he alleges that Stracher knew that Brodsky and the producer had an agreement for Brodsky to receive one-third of the docudrama's proceeds, but negotiated to deprive Brodsky of his rights, regardless. (*Id.* ¶¶ 18, 28.) Accordingly, the complaint also plausibly alleges that Stracher, in his role as attorney

5

for the partnership or one of the partners, aided the producers breach of his fiduciary duties to Brodsky.

For the foregoing reasons, Stracher's motion to dismiss the second amended complaint is denied.

### II. AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIM AGAINST NBCU/PEACOCK

The only arguments advanced in NBCU/Peacock's motion to dismiss turn on the success of Stracher's arguments, which the Court has rejected. (*See* R. 112 at 7.) Here, the complaint's allegations that NBCU/Peacock negotiated their agreement with Stracher and the producer, which blocked Brodsky's right to receive profits from the docudrama, despite knowing of the producer's partnership with Brodsky, supports an inference that they actively participated in the breach. (SAC ¶¶ 2, 28, 31.) NBCU/Peacock's motion to dismiss the second amended complaint is denied.

Date: 10/21/2024

JEREMY C. DANIEL
United States District Judge

6